Ronald DEFINO, et al.,
Plaintiffs-Appellants,

v.

CIVIC CENTER CORPORATION, et al.,
Defendants-Respondents.

No. 50843.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 15, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1986.

Application to Transfer Denied Nov. 18, 1986.

Theodore F. Schwartz, Barry S. Ginsberg, Clayton, for plaintiffs-appellants.

Alan C. Kohn, John A. Klobasa, St. Louis, for Sportservice Corp.

Terrence C. Sheey, Peter E. Moll, Lewis M. Barr, Washington, D.C., Frank N.

Gundlach, John Warshawsky, St. Louis, for respondent Civic Center Corp.

KAROHL, Presiding Judge.

Plaintiffs, self-employed vendors, appeal from an order of the trial court dismissing their petition for failing to state a cause of action against defendants, Civic Center Corporation (Civic Center) and Sportservice Corporation (Sportservice).

Plaintiffs were licensed city street vendors who sold various goods, wares and merchandise to the public prior to and during scheduled events in the area immediately adjacent to Busch Stadium. Defendant, Civic Center is a corporation which owns, manages and operates Busch Stadium in St. Louis. Defendant, Sportservice had a contract with Civic Center to sell goods, wares, and merchandise inside Busch Stadium. Both defendants are Missouri for profit corporations.

On March 23, 1984, an ordinance was enacted in the City of St. Louis which defendants claim regulated but did not ban street vending in the area immediately adjacent to Busch Stadium. The parties agree the ordinance permits vendors to sell in the area of the stadium if they enter into an agreement with Civic Center. As a result of the ordinance, plaintiffs are subject to prosecution in the municipal courts for sale of goods, wares and merchandise at Busch Stadium during scheduled events unless they contract with Civic Center.

Plaintiffs filed a petition alleging in three counts that defendants violated the antitrust laws of the State of Missouri, and tortiously interfered with plaintiffs' business relations. Plaintiffs' Count I is premised upon the conspiracy statute § 416.-031.1 RSMo 1978. The petition alleges that defendants "met together on numerous occasions and entered into a contract, combination or conspiracy to restrain trade, or commerce and to eliminate competition in the sale of ... goods, wares, merchandise, and food to fix prices ... in the geographic market consisting of the outside area im-

mediately adjacent to Busch Stadium." Plaintiffs further allege "the aforesaid combination and conspiracy consisted of an understanding and concert of action among the defendants and their co-conspirators, to maintain the market position of defendant, Sportservice, and to restrain trade, to destroy competition and to exclude competitors from the field of competition in the sale of goods, wares and merchandise, and food in and around the area outside and immediately adjacent to Busch Stadium." Plaintiffs allege that as a result of these conspiracies "defendants [have] and will have the effect of allowing for the sale of the goods, wares, merchandise and food inside and outside Busch Stadium at uniform, higher or stabilized prices all to the detriment of the public." Further, "defendant, Civic Center, also in a quid pro quo exchange agreed [with the City of St. Louis] to expend the approximate amount of One Million Dollars to landscape their own property in the outside area immediately adjacent to Busch Stadium in exchange for the City of St. Louis passing an ordinance to eliminate and ban all vendors except those controlled by Civic Center Corporation pursuant to the contract set forth in [petition] Exhibit A [1] from vending in the outside area immediately adjacent to Busch Stadium."

Plaintiffs' Count II is premised upon the monopoly statute § 416.031.2 RSMo 1978. The petition alleges that as a result of defendants' contract, combination or conspiracy defendants "performed acts in furtherance of said monopolization or attempt to monopolize by controlling who was permitted to be a vendor, outside Busch Stadium, what was to be sold, who it was to be purchased from and what price was to be charged to the public as set forth in [petition] Exhibit A attached hereto, all in violation of Section 416.031(2) R.S.Mo." Plaintiffs charge defendants with specific intent to monopolize and that defendants' acts resulted in them "obtaining the exclusive and total right to sell." Plaintiffs further charge that "[t]he defendants as a direct

1. Exhibit A is a standardized contract to be executed by Civic Center and vendors.

result of their conduct ... now possess monopoly power in the relevant market (goods, wares, merchandise and food) in the geographic market comprised of Busch Stadium and the outside area, immediately adjacent to the Stadium."

Plaintiffs' Count III alleges tortious interference with business relations. The petition alleges "[t]hat at the time defendants engaged in the ... conspiracy, defendants were each well aware that plaintiffs had in years prior engaged in the sale of goods, wares and merchandise in the area outside of and immediately adjacent to Busch Stadium and defendants were well aware that plaintiffs had existing and future economic relationships with their customers. Further, "defendants intentionally without justification and knowing that their conduct was wrongful and illegal ... thereby causing a termination of the business expectancies and business relations of plaintiffs." Defendants accomplished this by conspiring to restrain trade and eliminate competition in the area immediately adjacent to Busch Stadium. It alleges "Plaintiffs' business ... has been damaged and destroyed and plaintiffs have suffered actual damages."

The ordinance which plaintiffs claim bans street vending and which defendants claim protect their actions states *inter alia* as follows:

### Ordinance 59090

. . . . .

An ordinance to amend § 2 of Ordinance 38514, approved March 1, 1982, to revise the area where the selling or offering for sale or permitting the offering or selling of goods, merchandise, food, horticulture products or services is prohibited: and for an exception during the period of an agreement with Civic Center Corporation for the designated area surrounding Busch Stadium; and containing an emergency clause.

. . . . .

Section One. Section Two of Ordinance 38514, approved March 1, 1982, is hereby amended to read as follows:

Area Prohibited to Selling. No person shall sell or offer for sale or permit the offering or selling of goods, merchandise, food horticulture products or services upon any public streets ... except during the periods of time described below.

. . . . .

[Exceptions 1 and 2 are not relevant]

. . . . .

3 ... within which such person is a party to an agreement providing for such street vending with the Civic Center Corporation. (See Exhibit A—a letter from Civic Center Corporation outlining the general conditions which it anticipates such an agreement will include.)

. . . . .

Any person, firm or corporation violating the provisions of this Ordinance shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined a sum of not less than Twenty-Five Dollars ($25.00), nor more than Five Hundred Dollars ($500.00).

Defendants argue this ordinance regulates street vending which the City of St. Louis is empowered to undertake. The ordinance does not enact regulations. It only prohibits selling on penalty of a fine. It contains an exception for those persons who enter into an agreement with Civic Center. The ordinance does not give Civic Center the authority to license street vendors. It does not mention regulations. We are not aware of any legal authority that would permit a city to delegate licensing decisions to a private corporation, particularly one that would or may profit from its decisions. However, the validity of the ordinance is not directly at issue in this case.

 In determining the sufficiency of a petition challenged by a motion to dismiss, we give the petition its broadest intendment, treat all facts alleged as true, and construe the allegations favorably to plaintiffs to determine whether they invoke principles of substantive law, and inform defendant of what plaintiff will attempt to establish at trial. *Scheibel v. Hillis*, 531

S.W.2d 285, 290 (Mo. banc 1976); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo. App.1983). The petition need only allege ultimate facts, not evidentiary facts. *Scheibel*, 531 S.W.2d at 290.

■■■ The trial court's ruling on a motion to dismiss for failure to state a claim must be construed liberally and in favor of plaintiffs, giving them the benefit of all inferences fairly deducible from the facts stated therein. *Jaime v. Neurological Hospital Ass'n of Kansas City*, 488 S.W.2d 641, 643 (Mo.1973). The well pleaded facts alleged in the petition should be assumed to be true. *Stiffelman v. Abrams*, 655 S.W.2d 522, 525 (Mo. banc 1983). The dismissal will be upheld only if plaintiff could not recover on any theory pleaded. *Laclede Gas Co. v. Hampton Speedway Co.*, 520 S.W.2d 625, 630 (Mo.App.1975).

Plaintiffs' petition is based upon a common law tort and Chapter 416 RSMo 1978, the Missouri Antitrust Act. The Act closely parallels provisions of the Sherman Act of federal antitrust law. *See* Title 15 United States Code. The Missouri Act expressly directs that its provisions "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes." § 416.141 RSMo 1978. *Fischer, Etc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 313 (Mo. banc 1979).

■■■ The Eighth Circuit Court of Appeals has emphasized that "the courts are especially reluctant to dismiss a complaint for failure to state a claim in the rapidly developing antitrust area." *Great A & P Tea Co. v. Amalgamated Meat Cutters, Etc.*, 410 F.2d 650, 652 (8th Cir.1969). Antitrust laws are to be construed liberally and exceptions from their application are to be construed strictly. *Abbott Laboratories v. Portland Retail Druggist Association, Inc.*, 425 U.S. 1, 11, 96 S.Ct. 1305, 1313, 47 L.Ed.2d 537 (1976). There is a sound reason for this approach. These laws involve the element of protecting the general public by encouraging a free and competitive market.

We review each of plaintiffs' counts in light of the above-cited standard of review. Plaintiffs' Count I is based upon § 416.-031.1 RSMo 1978. That section provides: "Every contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful." This section is analogous to 15 U.S.C. § 1 of the Sherman Act.

To maintain a cause of action under § 1 of the Sherman Act a party must set forth the following allegations: (1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiff was injured as a proximate result of that conspiracy. *Martin B. Glauser Dodge Co. v. Chrysler Corp.*, 570 F.2d 72, 81 (3rd Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 413 (1978).

Count II of plaintiffs' petition is premised upon § 416.031.2 RSMo 1978. That section provides: "It is unlawful to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce in this state." This section is analogous to 15 U.S.C. § 2 of the Sherman Act. Under directive of § 416.141 RSMo 1978, we look to federal cases interpreting § 2.

Monopoly is comprised of two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966) *cited in Metts v. Clark Oil and Refining Corp.*, 618 S.W.2d 698, 703 (Mo.App.1981). Monopoly power is the power to fix prices and to exclude competition. *United States v. E.I. DuPont De Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956).

The attempt offense also has two elements: (1) specific intent to accomplish the illegal result; and (2) a dangerous probabil-

ity of success. *Spectrofuge Corporation v. Beckman Instruments, Inc.*, 575 F.2d 256, 276 (5th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).

Monopolization offenses require proof of a relevant market in which to test defendant's ability to lessen or destroy competition. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965). Defining the boundary of the relevant market is a threshold requirement in determining whether a defendant has violated § 2. *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 478 F.Supp. 243, 268 (E.D.Pa.1979) *aff'd.* 637 F.2d 105 (3rd Cir. 1980). The relevant market has two dimensions—a product and a geographic market.

■ Count III of plaintiffs' petition alleges tortious interference with business relations. The elements of the tort are as follows: (1) A contract or valid business relationship or expectancy (not necessarily a contract); (2) defendants' knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendants' conduct. *Salomon v. Crown Life Insurance Co.*, 536 F.2d 1233, 1238 (8th Cir.1976), *cert. denied*, 429 U.S. 691, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). Plaintiffs' petition alleged all the elements of the tort. It alleges plaintiffs sold products to the public in the area for a number of years; that defendants were aware of plaintiffs' business activities; that defendants acted to stop plaintiffs' sales independent of defendants; and, lack of justification and damages. We find Count III of plaintiffs' petition is sufficiently pleaded.

■ Upon review of the pleadings and the applicable principles of law plaintiffs' Counts I and II are sufficient to state a claim for relief. The pleading is in the language of the statute. We are not reviewing the merits of the claim. These are matters to be determined by the evidence.

Defendants attack the pleadings on the ground that it pleads conclusions not facts. However, the nature of plaintiffs' lawsuit is such that they could not specifically allege the facts that are known to defendants and unknown to plaintiffs. Plaintiffs are outsiders to the transactions between defendants and others and are foreclosed from determining the nature of the alleged transactions until the discovery stage of the lawsuit. While it is true plaintiffs allege legal conclusions when alleging conspiracy, restraint of trade and monopoly these conclusions are also the ultimate facts a court or jury would consider in a claim under Chapter 416. The pleading tracks the language of the statute and informs defendants of the facts and issues to be tried.

We find plaintiffs complied with Rule 55.05. In *Scheibel v. Hillis,* 531 S.W.2d 285 (Mo. banc 1976) our Supreme Court stated:

> Plaintiff could be compelled by motion ... to plead more specifically or by interrogatories to give more information ... but this does not mean the petition does not state a cause of action in its present form. A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established.

*Scheibel,* 531 S.W.2d at 290.

■ Defendant attacks the pleadings on grounds more appropriately alleged in an answer rather than a motion to dismiss. We address each ground to clarify the issues for further proceedings. Defendants claim they are protected by the enactment of the ordinance due to § 416.041.2 RSMo 1978. They contend this section represents a codification of the "state action" doctrine of federal antitrust law first enunciated by the United States Supreme Court in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker,* the court held that while a state may not give immunity to those who would violate the Sherman Act, legitimate statutory measures to solve economic problems through regulatory

schemes will not violate antitrust laws despite their anticompetitive features. *Parker*, 317 U.S. at 351–352, 63 S.Ct. at 313–314. We note that the ordinance does not relate to the solution of any defined economic problem. The only stated justification for the ordinance was public safety.

When a private party seeks to invoke the state action doctrine it must prove: (1) the challenged restraint must be one "clearly articulated and affirmatively expressed as state policy" *and* (2) the policy must be "actively supervised" by the state itself. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).

In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 790, 95 S.Ct. 2004, 2014, 44 L.Ed.2d 572 (1975), the Supreme Court stated, "[t]he threshold inquiry in determining if an anticompetitive activity is state action of the type that the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign." In *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141 (1966), the Supreme Court directly addressed the issue of implied exemptions from the federal antitrust laws through state regulation. They explained that it "has consistently refused to find that regulation gave rise to an implied exemption without first determining that exemption was necessary in order to make the regulatory [act] work, 'and even then only to minimum extent necessary.'"

■ Defendants have not met the *California Retail Liquor Dealers* guidelines by relying on the St. Louis City ordinance to prevent the petition from stating a cause of action. The ordinance was "deemed necessary for the preservation of public safety" but that expression is unexplained. The ordinance does not provide active supervision by the city even if we assume the charter of the City of St. Louis authorizes the city to pronounce State policy. The ordinance "delegates" supervision to a private corporation by granting it the power to negotiate the terms of an exemptory

agreement and to refuse to make an agreement as it chooses.

Further, no ordinance has been enacted that determines or evidences a finding that an exemption to the prohibition of Chapter 416 is necessary. The trial court cannot hold at the pleadings stage defendants' activities are protected by state action. The ordinance is not state action that will prevent the petition from stating a cause of action.

■ Defendants further claim their actions are protected by the *Noerr-Pennington* doctrine. That doctrine protects parties from antitrust liability when their actions are addressed to influence or persuade the legislature to take action with respect to a law that would produce a restraint or monopoly. *United Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965) and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961). A reading of plaintiffs' petition reveals that plaintiffs do not charge defendants with antitrust activities in petitioning the Board of Aldermen to pass the ordinance. The petition is stated in language broad enough to include all of defendant's activities with regard to street vending. As a matter of pleading the trial court cannot hold defendants' actions are protected by the *Noerr-Pennington* doctrine. We repeat the ordinance creates a city "misdemeanor." It does not authorize a contract, conspiracy or combination in violation of Chapter 416. The city has not recognized or decided that the public good requires street vending to be operated as a monopoly. In addition, defendants deny the exempting agreement, mentioned in the ordinance, is or will be monopolistic or that price fixing will result. The defendants' denial of a monopoly, conspiracy or price-fixing is inconsistent with an assertion of state action approving such conduct and *Noerr-Pennington* approving conduct limited to promoting legislation as defenses.

■ We also reject defendants' argument that the ordinance is a causation in

fact shield to any claim asserted by plaintiffs. This argument is that any conspiracy of defendants is and would be ineffective without the ordinance of the city. Restated, if there were no ordinance plaintiffs would be unaffected by the alleged conspiracy and it is the ordinance and not an alleged conspiracy that caused the alleged damages. The pleadings in their broadest intendment are that the ordinance promotes conspiratorial activity. A city may be a conspirator and the fact that the city is not a party does not insulate defendants from plaintiffs' claims. Cities are not immune from antitrust liability. *City of Lafayette, La. v. La. Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). At the pleading stage the ordinance does not rule out causation.

█ Finally, defendants assert the petition, all counts, fails to state a cause of action because it fails to allege that plaintiffs have attempted to enter into an agreement with defendant Civic Center and were unsuccessful. This argument fails because it assumes that plaintiffs had a duty to make an agreement with Civic Center. That invokes a contested issue because plaintiffs assert that the agreement referred to in the ordinance and in defendants' argument is in violation of § 416.-031.1 and .2 RSMo 1978. If that is true, plaintiffs had no duty to enter into such an agreement.

Plaintiff's petition sufficiently states a cause of action in three counts upon which relief may be granted and defendants have asserted no grounds on which they should be entitled to dismissal as a matter of law.

Reversed and remanded.

SIMON and CRANDALL, JJ., concur.