Pursuant to the memorandum filed herein this day,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant's unilateral reduction of plaintiffs' base hourly wage as of April 15, 1986, violated § 8 of the 1985 Amendments to the Fair Labor Standards Act and 29 U.S.C. § 215(a)(3), and that defendant is, pursuant to 29 U.S.C. § 216(b), liable to plaintiffs for unpaid overtime from April 15, 1986 through June 6, 1990, as well as a reasonable attorney's fee and costs.

IT IS FURTHER ORDERED that each party shall file, within fifteen (15) days of the date of this order, additional documentation as to plaintiffs' hours and pay dating back to April 15, 1986 and the parties' calculations therefrom of overtime owed each plaintiff, as well as a memorandum not to exceed five pages addressing the proper calculation of both damages and pre-judgment interest.

IT IS FURTHER ORDERED that plaintiffs shall, within fifteen (15) days of the date of this order, file with the Court and serve on defendant their application for attorney's fees with supporting documentation. Defendant may, within five (5) days of receipt of the application, file any objections thereto.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 124, Plaintiff,**

v.

**ALPHA ELECTRIC COMPANY, INC., Defendant.**

No. 88–1071–CV–W–9.

United States District Court, W.D. Missouri, W.D.

Jan. 24, 1991.

James G. Walsh, Jr., Jolley, Walsh, Hager & Gordon, Kansas City, Mo., for plaintiff.

Robert J. Janowitz, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

### Background

On November 2, 1988, the International Brotherhood of Electrical Workers, Local Union No. 124, (Local 124) filed an action in this court pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 to enforce an arbitration award against Alpha Electric Company, Inc. (Alpha) dated July 18, 1988. Alpha is an electrical contractor and a signatory to the collective bargaining agreement between the Kansas City Division, Kansas City Chapter, National Electrical Contractors Association (NECA) and Local 124. Local 124 is a labor organization that represents electrical workers for purposes of collective bargaining. The arbitration award states that Alpha violated the subcontracting clause by subletting electrical work to Alpine Electric Company (Alpine), an electrical contractor not signatory to the collective bargaining agreement.

On December 22, 1988, Alpha filed its Answer which contained ten affirmative defenses and a four-count Counterclaim.

On March 13, 1989, Local 124 moved for summary judgment and Rule 11 sanctions. On March 18, 1989, discovery was stayed. On April 21, 1989, Alpha opposed Local 124's summary judgment and sanctions motions and moved to dismiss plaintiff's Com-

plaint due to lack of subject matter jurisdiction.

On May 16, 1989, plaintiff moved "that the court issue an order directing the Small Business Administration to provide plaintiff with copies of loan applications and other documents relating to loans to Alpha Electric Company, Inc. and Alpine Electric Company, Inc...." Defendants opposed this motion on May 25, 1989.

On June 24, 1989, Alpha filed its "First Amended Answer and Counterclaims" in which it adds the affirmative defense that "[p]laintiff procured the 'award' by means of fraud, corruption, or other undue means." Defendants's June 14, 1989, First Amended Answer and Counterclaims at 28.

### Undisputed Facts

Local 124 and Alpha were parties to a collective bargaining agreement effective September 1, 1986, through August 31, 1989, covering Alpha's journeymen and apprentice electrician employees. Complaint at ¶ 5. This agreement is commonly referred to by the parties as the Inside Agreement.

The Inside Agreement between Local 124 and Alpha contains a grievance procedure which provides as follows:

### Grievances—Disputes

Section 1.04. During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

(a) There shall be a Labor–Management Committee of three representing the Union and three representing the Employer. It shall meet regularly once a month. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary.

(b) All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor–Management Committee.

(c) All matters coming before the Labor–Management Committee shall be decided by majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

(d) Should the Labor–Management Committee fail to agree or to adjust any matter, such may be submitted jointly or unilaterally by the parties to this Agreement to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decision shall be final and binding on both parties hereto.

Section 2.13 of the Inside Agreement provides in relevant part as follows:

(a) The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

(b) All charges of violations of Section 2.13(a) shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

In two grievances dated April 29, 1988, and June 20, 1988, (each grievance concerned two jobs), Local 124 alleged that Alpha had subcontracted bargaining unit work to Alpine in violation of Section 2.13(a) of the Inside Agreement. Plaintiff's March 13, 1989, Motion for Summary Judgment, Affidavit of Philip A. Nichols, Exhibits A and B.

The Labor–Management Committee conducted a hearing regarding the two grievances on June 28, 1988. Local 124 was represented at the Labor–Management Committee hearing on June 28, 1988, by its business agent, Philip A. Nichols. Alpha was represented at the June 28, 1988, hearing by its president, Lyn Shelton.

The Committee issued a unanimous award dated July 18, 1988. The Committee's award provides in relevant part:

> After a thorough review of all of the facts, evidence, testimony and circumstances surrounding these grievances presented, the Labor–Management Committee issued the following unanimous award:
>
>> Both grievances are sustained in their entirety. Alpha Electric Co., Inc. is in violation of Article II, Section 2.13(a) of the current inside labor agreement and is ordered to immediately cease these violations.
>>
>> Alpha Electric Co., Inc. is further ordered to make any bargaining unit employee who lost work as a result of these violations whole for all economic losses suffered as a result of these violations, and to make all fringe payments required by the inside labor agreement for all hours of such lost work.
>>
>> The Labor–Management Committee retains jurisdiction herein for purposes of resolving issues which may arise concerning the remedy.

In a letter dated July 20, 1988, to Robert Haines at NECA, Lyn Shelton stated in part: "In regard to the notice we received, which was dated July 18, 1988, we do not agree with the outcome of the decision and, therefore, wish to file an appeal."

By letter dated August 5, 1988, Robert W. Haines, Secretary of the Labor–Management Committee, responded: "Labor–Management Committee reviewed your letter dated July 20, 1988 and received in the NECA office on August 1, 1988, requesting an appeal of a recent Labor–Management Decision. All Labor–Management decisions are final and binding, therefore your appeal is denied."

Alpha has not complied with the award of the Labor–Management Committee.

Alpha obtained a $15,000 welfare fund bond, No. 1098188, from Continental Insurance Company (Continental) dated June 11, 1987. The bond guaranteed payment under the terms of the Inside Agreement of contributions to Local 124's Annuity Trust Fund.

The welfare fund bond contained a clause stating that "it is understood and agreed that should a breach of this obligation be made by the Principal hereof, notice shall be given the Surety of such breach by the Obligee not less than fifteen (15) days after such breach."

Local 124 sent a letter to Continental dated October 26, 1988, advising Continental that Alpha had breached its collective bargaining agreement with Local 124.

Continental cancelled Alpha's welfare fund bond on October 27, 1988. *Id.*, Exhibit C. This cancellation was rescinded on December 1, 1988.

### Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ If "a grievance determination is not 'final and binding under the collective bargaining agreement,' the parties may not maintain an action under § 301 to confirm or vacate that determination." *General Drivers, Local 89 v. Riss and Co.,* 372 U.S. 517, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963). An award is not "final" if it decides only liability and leaves unresolved the question of remedy. *Millmen Local 550 v. Wells Exterior Trim,* 828 F.2d 1373, 1375–77 (9th Cir.1987).

■ Defendant argues that the award of the Labor–Management Committee is not final because it specifies that the "Labor–Management Committee retains jurisdiction herein for purposes of resolving issues which may arise concerning the remedy."

The two cases that defendant cites to support its Motion to Dismiss involve awards where the arbitrators expressly refused to specify any remedy. *Wells Exterior Trim,* 828 F.2d at 1374–75 (the arbitrator's decision provided that "[t]he question

of remedy in its entirety is remanded to the Parties, the Arbitrator retaining jurisdiction in the event the Parties cannot agree upon such a remedy."); *Public Service Electric and Gas Co. v. System Council U–2*, 703 F.2d 68, 69–70 (3d Cir.1983) (after arbitration panel determined that liability existed, the panel and parties agreed that no remedy would be prescribed until the parties had an opportunity to submit additional argument to the panel).

■ Here, the Labor–Management Committee's "award" specified a make-whole remedy. All details of the make-whole remedy do not need to be provided in order for an arbitration award to be final. *See United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which concerned an arbitration award of "reinstatement with back pay, minus pay for a 10–day suspension and such sums as these employees received from other employment." *Id.* 80 S.Ct. at 1360. The district court's enforcement of the award was affirmed and the case was remanded to allow the arbitrator to calculate the specific amounts due under the award. *Id.* at 1362.

Because the Labor–Management Committee decided both the liability and remedy issues, the award is final and binding. This court has subject matter jurisdiction to confirm the award under § 301 of the LMRA.

### Plaintiff's Motion for Summary Judgment Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

### Statute of Limitations

Plaintiff argues that Alpha is precluded from raising in this case any defense that could have been a ground to vacate the award because Alpha failed to raise the grounds within 90 days after receipt of the award.

■ The timeliness of an action to vacate an arbitration award brought under § 301 of the LMRA is "determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *see also International Brotherhood of Electrical Workers, Local 969 v. Babcock & Wilcox,* 826 F.2d 962, 964 (10th Cir.1987). The appropriate Missouri statute is § 435.405, subd. 2, part of the Uniform Arbitration Act, as adopted in Missouri. *Local 2, International Brotherhood of Electrical Workers v. Anderson Underground Construction, Inc.,* No. 86–4487–CV–C–9, 1988 WL 125710 (W.D.Mo. November 7, 1988); *see also Babcock & Wilcox,* 826 F.2d 962, 964–65 (10th Cir. 1987) (in LMRA arbitration award confir-

mation proceeding court borrowed 90 day statute of limitations contained in Colorado's version of the Uniform Arbitration Act); *Johnson v. Hussmann Corp.,* 805 F.2d 795, 797 (8th Cir.1986) (§ 301 claims must be brought within 90 day state statute of limitations in Missouri).

Section 435.405, subd. 2 provides: "An application [to vacate an award] under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known."

■ Failure to move to vacate an arbitration award within the relevant period of limitations precludes a defendant from defending a subsequent action to enforce the award by advancing defenses that could have been asserted as grounds for vacating the award. *Babcock and Wilcox,* 826 F.2d 962, 965–66 (10th Cir.1987); *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986); *Brotherhood of Teamsters Local 70 v. Celotex Corp.,* 708 F.2d 488 (9th Cir.1983). "To permit a party to forego a timely challenge to the validity of an award and then raise its objections in an otherwise summary confirmation proceeding would be contrary to the policy of promoting quick and final resolution of labor disputes." *Babcock and Wilcox,* 826 F.2d at 966.

■ At the latest, Alpha received notice of the award on July 20, 1988, the date Alpha wrote to NECA stating it wanted to appeal the award.

Alpha did not seek to vacate the award before it asserted its affirmative defenses and counterclaims in its Answer filed on December 22, 1988, more than 150 days after July 20, 1988.

Defendant argues that the 90 day limitations period should be measured from August 7, 1988, the date Lyn Shelton received the response to her appeal of the arbitration award stating that "[a]ll Labor–Management decisions are final and binding, therefore your appeal is denied." Alpha should have known the award was

final because § 1.04 of the Inside Agreement provides for submission of the dispute to the Council on Industrial Relations *only* if the Committee fails "to agree or to adjust the matter."

Section 435.405, subd. 2 explicitly provides that "[a]n application [to vacate an award] under this section shall be made within ninety days after *delivery of a copy of the award to the applicant. . . .*" (Emphasis added.) *See Local 2, International Brotherhood of Electrical Workers v. Anderson Underground Construction, Inc.,* No. 86–4487–CV–C–9 (W.D.Mo. November 7, 1988) at p. 5, ("defendants had 90 days after the date a copy of the award was delivered to them to file an application to vacate the arbitration award."). In this case, the 90 day statute of limitations began running on July 20, 1988, not on August 7, 1988.

Defendant also asserts that the statute of limitations stopped running on November 2, 1988, the date Local 124 filed its Complaint. Defendant cites Wright and Miller, *Federal Practice and Procedure,* § 1419 at 109 (1971), for the proposition that the filing of a plaintiff's Complaint tolls or suspends the statute of limitations on compulsory counterclaims. Even if defendants are correct that the filing of the Complaint tolls the statute of limitations, November 2, 1988, is more than 90 days after July 20, 1988, when the statute of limitations began to run. Defendant's affirmative defenses and counterclaims are not timely.

■ Defendant contends that even if its defenses and counterclaims were not brought within the applicable limitations period, "borrowed" state law nonetheless entitles it to bring these claims. Defendant cites two nineteenth century Missouri cases, *Shores v. Bowen,* 44 Mo. 396, 400 (1869) and *Hinkle v. Harris,* 34 Mo.App. 223, 231 (1889), for the proposition that under Missouri law, "a failure to file a petition to vacate an arbitration award does not prevent that party from raising any and all defenses available to it in opposition to a petition for enforcement of the award."

The timeliness of a § 301 action to vacate an arbitration award is governed, as a matter of federal law, by reference to the appropriate state statute of limitations. *United Auto Workers v. Hoosier Cardinal Corp.,* 86 S.Ct. at 1113. However, "in § 301 suits the applicable law is *'federal law,* which the courts must fashion from the policy of our national labor laws.' " *Id.* at 1110–11 citing *Textile Workers Union of America v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (emphasis added). "[I]ncompatible doctrines of local law must give way to principles of federal labor law." *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). Federal circuit courts "have uniformly held that a defendant's failure to move to vacate the arbitration award within the prescribed time period precludes it from seeking affirmative relief in a subsequent action to enforce the award." *Babcock and Wilcox,* 826 F.2d at 966 (citations omitted). Therefore, despite the two nineteenth century Missouri cases it cites, Alpha's failure to move to vacate the Labor–Management Committee's arbitration award within the 90 day limitations period bars it from now asserting in this action defenses or counterclaims which could have been raised in a motion to vacate.

■ Finally, defendant argues that: "At minimum, the defense of 'fraud, corruption, or other undue means,' which recently matured when defendant learned of Phil Nichols' deliberate misrepresentations to the Committee about his conversations with Doug Miller, clearly is timely."

Section 435.405, subd. 2 provides in part that if an action to vacate an arbitration award is "predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known." In its June 14, 1989, First Amended Answer and Counterclaims, defendant asserts for the first time that "[p]laintiff procured the 'award' by means of fraud, corruption, or other undue means." ¶ 28. Defendant alleges that:

Phil Nichols, Local 124's representative, testified in a deliberately false and misleading manner at the labor-management meeting of June 28. For example, Mr. Nichols told the persons at the meeting that Doug Miller had told him that Alpha was the electrical subcontractor on two of the projects in issue. In fact, Mr. Miller had told Nichols that Alpine Electric Co., not Alpine, (You sure about this? Confusing, isn't it) was the electric subcontractor.

*Id.* at ¶ 29. In his affidavit, Doug Miller, an official of Hastings Construction Company, states that "Mr. Nichols' statement that I told him that Alpha Electric Company was the electrical subcontractor on the Community Christian Church and Central Middle School projects is false."

Under Mo.Rev.Stat. § 435.405, subd. 2, a defense based on fraud must be raised "within ninety days after such grounds are known or *should have been known.*" (Emphasis added.) Alpha's president knew about Nichols' testimony on June 28, 1988, because she was present at the meeting with the Committee. Indeed, Shelton states that during the meeting she believed Nichols testified falsely about business relationships between Alpha and Alpine. Shelton affidavit at 7–8. Alpha presents no explanation why it did not obtain Miller's version of the conversation with Nichols soon after the June 28, 1988, meeting. Based on this record, there is no reasonable basis for concluding that Alpha did not know or should not have known about the discrepancy between Nichols' testimony and what Miller said more than 90 days before the ground was first raised in this case on June 14, 1989. Alpha is barred from asserting in this action an affirmative defense based on fraud arising from the June 28, 1988, testimony of Nichols.

### Defendant's Affirmative Defenses and Counterclaims

█ Because defendant did not raise affirmative defenses or counterclaims within the statutory limitations period, it is barred from asserting in this case any grounds for relief from the award that could have been raised in an application to vacate the award.

Missouri Revised Statutes § 435.405, subd. 1 sets forth the grounds that can be asserted in an application to vacate an award:

1. Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

█ In defendant's first affirmative defense it asserts that plaintiff's Complaint fails to state a claim upon which relief can be granted. This ground could not have been raised in an application to vacate. Nevertheless, using the appropriate Motion to Dismiss standard, plaintiff's Complaint states a claim upon which relief can be granted.

In defendant's second and sixth affirmative defenses, it asserts that this court lacks subject matter jurisdiction. As discussed previously in this order, subject matter jurisdiction is not precluded simply because all issues that might arise in the future from the Committee's make-whole remedy were not resolved. This court has subject matter jurisdiction to enforce the

award of the Labor–Management Committee.

In defendant's third affirmative defense it asserts that the Agreement's subcontracting clause is an unlawful "hot cargo" agreement violating § 8(e) of the LMRA, 29 U.S.C. § 158(e). Defendant recognizes that the "construction industry proviso" in § 8(e) of the LMRA permits subcontracting clauses like Section 2.13(a) of the Inside Agreement. Also, defendant acknowledges that the Supreme Court has held that construction industry unions can enter into agreements prohibiting the subcontracting of job site work to non-union employees. *Woelke and Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982).

Defendant's unlawful "hot cargo" claim is based on the assertion that "the Labor–Management Committee's purported interpretation and application of the 'subcontracting clause' violates § 8(e) and the antitrust laws because Local 124, NECA, and the Committee used the subcontracting clause as a subterfuge for restraining free market competition by Alpha and its perceived 'double-breasted' counterpart, Alpine." Defendant's April 21, 1989, suggestions at 25. As clarified by the defendant's briefing, this ground asserts misconduct on the part of the arbitrators. As such, it could have been raised in an application to vacate (§ 435.405, subd. 1(2) or (3)) and is, therefore, barred by the statute of limitations.

In defendant's fourth and fifth affirmative defenses it alleges that the proceedings before the Committee were fundamentally unfair because of various alleged procedural improprieties. These challenges to the award could have been raised in an application to vacate under § 435.405, subd. 1(2), (3) or (4).

In defendant's seventh affirmative defense it alleges that the arbitration award fails to "draw its essence" from the inside Agreement because "it was unsupported by credible evidence and served as a mere pretext for an underlying purpose to inflict punishment against Alpha for what was perceived was a 'double-breasted' operation." Defendant's April 21, 1989, sugges-

tions at 19. This defense could have been raised in an application to vacate under § 435.405, subd. 1(2), (3) or (4).

In defendant's eighth affirmative defense it alleges that the Labor–Management Committee members were not neutral arbitrators; they "were biased and acted collusively and in bad faith in rendering the 'award.' " This challenge to the award could have been raised under § 435.405, subd. 1(2).

In defendant's ninth affirmative defense and in Count II of its counterclaims defendant asserts that in filing and processing the grievances and in attempting to enforce the award, Local 124 engaged in illegal secondary activity in violation of § 8(b)(4) of the LMRA, 29 U.S.C. § 158(b)(4). In support of these claims, Alpha asserts that Local 124 had a primary dispute with Alpine and attempted to apply pressure on Alpine by filing the grievances against Alpha.

> There is substantial evidence that the Union knew that Alpha was not the actual subcontractor on the projects at issue, but apparently thought that it could influence Alpine by twisting [Alpha's] arm: Thus, the Union violated § 8(b)(4) of the Act when it pursued its grievances against a neutral employer (Alpha) as a means of attempting to exert pressure on the primary employer (Alpine).

Defendant's April 21, 1989, suggestions at 24.

This challenge to the award could have been raised in an application to vacate under § 435.405, subd. 1(2) or (3).

In defendant's tenth affirmative defense it asserts that the award was obtained by fraud, corruption or other undue means. This ground could have been raised in an application to vacate under § 435.405, subd. 1(1).

In Count I of defendant's counterclaims it seeks vacation of the award. This relief could have been sought by filing a timely application under § 435.405 and, therefore, cannot be asserted in this case because the statute of limitations has run.

In Count III, defendant asserts an antitrust claim under § 1 of the Sherman Act, 15 U.S.C. § 1. Defendant argues that because there was no subcontracting arrangement between Alpha and Alpine "the 'subcontracting' clause of the agreement as applied by the Labor–Management Committee is an unlawful 'hot cargo' agreement in violation of § 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e)."

Section 8(e) prohibits agreements between unions and employers that require an employer to cease doing business with another party. However, § 8(e) contains the following proviso:

> [N]othing in this section shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work[.]

Clauses such as § 2.13(a) of the Inside Agreement are lawful under the construction industry proviso of § 8(e). *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). Therefore, there is nothing unlawful on its face about § 2.13(a) or about the union's effort to enforce it.

Defendant's argument seems to be premised on its disagreement with the factual finding made by the Committee that there was a prohibited subcontracting arrangement between Alpha and Alpine. As previously discussed, where arbitration is specified in a collective bargaining agreement, the award is final and binding unless challenged in a timely manner.

Defendant's various grounds for challenging the "award" are barred by the applicable statute of limitations because they could have been, but were not, asserted in a timely application to vacate.

In Count IV of Alpha's Counterclaim, Alpha alleges that Local 124 tortiously interfered with an established business relationship between Alpha and Continental.

Missouri recognizes a claim for tortious interference with a business expectancy. The elements of this claim are:

(1) A contract or a valid business relationship or expectancy (not necessarily a contract);

(2) Defendant's knowledge of the contract or relationship;

(3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;

(4) The absence of justification; and

(5) Damages resulting from defendant's conduct.

*Conoco Inc. v. Inman Oil Co., Inc.*, 774 F.2d 895, 906 (8th Cir.1985) *citing Fischer, Spuhl, Herzwurm and Associates, Inc. v. Forrest T. Jones and Co.*, 586 S.W.2d 310, 315 (Mo.1979) (en banc) (citation omitted); *Defino v. Civic Center Corp.*, 718 S.W.2d 505, 511 (Mo.App.1986) (citation omitted).

Alpha argues that even though Local 124 was not successful in obtaining cancellation of the welfare fund bond, "it apparently has been successful in inducing Continental to terminate an established business relationship with Alpha."

Alpha asserts that Continental "had issued all types of bonds" for it in the past. "Although [the welfare fund] bond was reinstated after I protested to Continental, Continental has refused to issue any other bonds for Alpha. This inability to obtain bonding has prevented Alpha from bidding on projects which, in turn, has resulted in significant lost profits."

Local 124 responds that it notified Continental "[i]n order to protect its interests and avoid a possible contention by Continental of non-compliance with the notice requirement...." Plaintiff's March 18, 1989, Motion for Summary Judgment at 41.

Defendant has failed to present properly sufficient facts to persuade me that there is a genuine issue for trial. For instance, no facts have been presented showing that Local 124 knew about the relationship between Alpha and Continental other than the one bond that was cancelled and reinstated. Accordingly, on this record, summary judgment will be granted in favor of plaintiff on Count IV.

Accordingly, it is hereby ORDERED that:

1) defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied;

2) plaintiff's Motion for Summary Judgment on its action to enforce the arbitration award and on Counts I–IV of defendant's Counterclaim is granted; and

3) defendant is ordered to comply with the July 18, 1988, award of the IBEW–NECA Labor-Management Committee.