John A. BROCK, et al., Respondents,

v.

George D. BLACKWOOD,
Jr., Appellant.

No. WD 62828.

Missouri Court of Appeals,
Western District.

June 15, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2004.

Application for Transfer Denied
Sept. 28, 2004.

Heywood H. Davis, Kansas City, MO, for Respondents.

John C. Dods, Roger C. Geary, Todd W. Ruskamp, Christopher V. Cotton, and Bernard F. Weinand, Kansas City, MO, for Appellant.

Before EDWIN H. SMITH, P.J., and HOLLIGER and NEWTON, JJ.

EDWIN H. SMITH, Presiding Judge.

On April 19, 2000, John A. Brock and Donnie V. Brock, the respondents, filed, in the Probate Division of the Circuit Court of Jackson County, a one-count petition seeking to terminate, pursuant to

§ 456.590.2,[1] eleven *inter vivos* irrevocable "Giftrusts," established with American Century Mutual Funds, Inc. (American Century),[2] for the benefit of their eleven grandchildren. In their petition, they alleged that the Giftrusts were created by investing funds from the *inter vivos* irrevocable trusts that they had established in Oklahoma for the benefit of their grandchildren, of which they were co-trustees (Brock Family Trusts). On November 30, 2001, the respondents filed an amended *three-count petition, in Count I of which* they continued to seek the termination of the Giftrusts, pursuant to § 456.590.2. In Counts II and III, they asserted claims for damages against the trustee of the Giftrusts, George Blackwood, the appellant, for breach of a fiduciary duty and negligence, both of which were based on his alleged failure to timely terminate the Giftrusts and remit the proceeds to the respondents, as co-trustees of the Brock Family Trusts. The appellant asserted several counterclaims against the respondents. The appellant and the respondents both sought summary judgment on the respondents' amended petition. In addition, the appellant sought summary judgment on his counterclaims. The probate court granted summary judgment for the respondents on all three counts of their amended petition, while denying the appellant's motion as to the respondent's amended petition and the appellant's counterclaims.

The appellant raises three points on appeal. In Point I, he claims that the probate court erred in granting summary judgment to the respondents on Count I of their amended petition, finding that the Giftrusts were a "nullity from the beginning," because such a cause of action was not pled by the respondents in their peti-

tion. In Point II, he claims that the probate court erred in entering summary judgment, on April 11, 2003, for the respondents, as the co-trustees of the Brock Family Trusts, on Counts II and III of their amended petition, awarding them damages for breach of a fiduciary duty and negligence by the appellant, based upon the court's purported "judgment" of January 3, 2001, finding that the Giftrusts were a "nullity from the beginning," because, in actuality, it was not a judgment finally determining that issue. In Point III, he claims that the probate court erred in denying his various counterclaims because the court's finding in support thereof, that the Giftrusts were a "nullity" from the beginning, was not supported by the summary judgment record.

Dismissed in part, and reversed and remanded in part.

### Facts

Between 1986 and 1995, the respondents established the Brock Family Trusts, one for each of their eleven grandchildren. The respondents were named as the co-trustees of those trusts. At the time, the respondents were residents of Oklahoma, and each of the trusts contained a provision stating that the trust was to be construed and administered in accordance with Oklahoma law.

Between 1993 and 1995, Mr. Brock created the Giftrusts by investing in a mutual-fund trust account with American Century. In creating the Giftrusts for his grandchildren, Mr. Brock signed an "Adoption Agreement" for each trust, agreeing to the terms of the Giftrust. Each agreement provided for the naming of a primary and alternate beneficiary, and included language that the grantor understood that

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. At the time, American Century was known as Twentieth Century Investors, Inc.

"this Giftrust is irrevocable and I cannot get my money back." The total amount of money invested in the eleven Giftrusts was $612,604.39. Pursuant to the terms of the Giftrusts, a trustee for the trusts was to be selected by American Century. The appellant was selected as the trustee for all eleven Giftrusts.

By 2001, the aggregate value of the Giftrusts had grown to $1.8 million. However, beginning in 1998, the performance of the Giftrusts dropped sharply compared to previous years. As a result, on April 19, 2000, the respondents filed a one-count petition in the Circuit Court of Jackson County, Probate Division, to terminate the Giftrusts, pursuant to § 456.590.2, which authorizes early termination of a trust with the consent of the adult beneficiaries. The petition alleged that, in recent years, the Giftrusts were yielding a poor investment return, and, as a result, requested the probate court to

> enter its order (a) terminating the Giftrusts herein named and (b) directing that the remaining assets of each Giftrust, both principal and accrued and undistributed income, be transferred to the Trustees of the corresponding Irrevocable Trusts [i.e., the Brock Family Trusts] from which the Giftrust assets were originally transferred, to be held and administered in accordance with the Deed of Trust for the Irrevocable Trust for each beneficiary."

On August 22, 2000, the appellant filed an answer to the petition, along with a motion asking the probate court to add, as parties, any unknown and unborn contingent remainder beneficiaries of the Giftrusts, and to appoint an independent guardian *ad litem* to represent those additional parties, as well as the existing minor beneficiaries.

On January 3, 2001, the probate court denied Blackwood's motion to add parties and appoint a guardian *ad litem*. Howev-

er, in its order, the probate court went beyond the issue raised in Blackwood's motion, finding that "[t]he attempt by John A. Brock, as an individual trustee, to create the eleven giftrusts involved herein is a nullity." The court's determination that the Giftrusts were a nullity was based upon its finding that Mr. Brock had acted without Mrs. Brock in creating the Giftrusts, using funds from the Brock Family Trusts. The trial court concluded that this was improper, because the respondents were co-trustees of the Brock Family Trusts, the purported grantors of the Giftrusts, and thus, both Mr. Brock and Mrs. Brock had to have acted in creating the Giftrusts.

On February 7, 2001, at a time when the aggregate value of the Giftrusts was approximately $1.2 million, the respondents sent the appellant a letter requesting that, in light of the trial court's January 3, 2001, "judgment," declaring the Giftrusts to be a nullity, the appellant "immediately divest all of the Brock accounts of their interests in American Century Giftrusts shares and wire the proceeds to the respective trustees of the trust from which the original transfers were made."

On March 30, 2001, the appellant filed a "Motion for Supplemental Judgment." In his motion, the appellant, in recognition of the probate court's determination of January 3, 2001, that the Giftrusts were a nullity from the beginning, sought an "order and judgment" of the court: (1) declaring that he was "an innocent transferee" of the funds invested in the Giftrusts; (2) authorizing his being credited for administrative and investment expenses, and income taxes paid; (3) allowing him attorney's fees; and, (4) directing him as to whom he was to pay the proceeds of the Giftrusts, once liquidated.

Between March 20, 2001, and April 12, 2001, the appellant, without court order,

liquidated all the shares of the eleven Giftrusts. In a letter dated May 4, 2001, the appellant's counsel informed the respondents' counsel that the proceeds from the sale, which totaled $875,603.12, had been placed in eleven American Century money market accounts. This was apparently done to remove the funds from the volatility of the market while the appellant awaited a ruling on his pending motion asking the probate court to issue an order indicating to whom he was to pay the proceeds from the liquidation of the Giftrusts. Out of this amount, the appellant paid $64,675.74 in federal taxes, and $19,438.38 in state taxes, leaving a total of $801,292.12 in proceeds from the liquidation of the Giftrusts.

On May 18, 2001, the probate court entered an order overruling the appellant's motion for a "supplemental judgment." In doing so, the court stated that the respondents, in responding to the appellant's motion:

assume[d] that the court [had] ruled that no giftrusts were created and that that ruling was a final disposition of the question of the existence of the trusts. [*Respondents*] *are incorrect in that assumption.* The only issue before the court was ruled upon January 3, 2001 was whether or not unborn and unascertained parties should be made parties to the action. The judgment of January 3, 2001 'invited' [respondents] to file a motion for summary judgment to declare that no trusts were established. [Respondents] have not filed such a motion.

On July 16, 2001, upon stipulation of the parties, the probate court entered an order directing the respondents to pay the appellant $5,000 in attorney's fees and directing the appellant, upon receipt of said attorney's fees, to remit to the respondents "the sum of $770,000 out of at least $801,292.1 accessible to [the appellant] from the sale

of the American Century Giftrusts involved herein on March 20 and April 12, 2001." The order further provided:

3. That the remainder of such sale proceeds and the money market interest being earned thereon be held subject to the further order [*sic*] the Court; and

4. That [respondents] have until August 27, 2001 within which to respond to [appellant's] Trustee's Petition for Supplemental Judgment and Motion for Summary Judgment filed with an Affidavit and Legal Memorandum on approximately June 15, 2001.

On July 20, 2001, a check for $770,000, payable to the respondents, was hand-delivered to the respondents' attorney.

Despite the stipulated order of July, on November 30, 2001, the respondents filed an amended petition, in Count I of which they continued to seek early termination of the Giftrusts, pursuant to § 456.590.2. In Count II of their petition, the respondents alleged that the appellant breached his fiduciary duty to them by failing to promptly liquidate the Giftrusts after the probate court's order of January 3, 2001, became final, claiming that the delay between February 7, 2001, when the respondents asked the appellant to liquidate the Giftrusts, and April 12, 2001, the date on which the last of the Giftrust shares were sold, resulted in a loss of $340,053.75 in the value of the Giftrusts. The respondents also sought $19,956.99 for funds which they alleged were "still improperly held by" the appellant. Count III essentially alleged the same claim as Count II, except on a theory of negligence for the appellant's failure to promptly liquidate the Giftrusts upon learning that Mrs. Brock had not actively participated in the creation of the Giftrusts, such that they were a "nullity from the beginning."

On February 13, 2002, the appellant filed an answer and seven counterclaims.

In Count I of his counterclaims, the appellant sought a declaratory judgment that the Giftrusts were properly created. In Counts II and III, he sought the return of the $770,000 paid to the respondents on July 20, 2001, on theories of unjust enrichment and money had and received, respectively. In Count IV, the appellant sought the imposition of a constructive trust as to the $770,000. In Count V, he sought a mandatory injunction directing the return of the $770,000. In Count VI, the appellant sought an award of attorney's fees and expenses incurred in defending the respondents' claims. In Count VII, the appellant sought a declaratory judgment that he was an innocent transferee of the funds invested in the Giftrusts.

On November 27, 2002, the respondents filed a motion for summary judgment on their amended petition. On March 3, 2003, the appellant filed a motion for summary judgment on the respondents' amended petition and his counterclaims. On April 11, 2003, the probate court entered summary judgment in favor of the respondents on all three counts of their amended petition and denied the appellant's motion. As to Count I, the probate court declared the Giftrusts to be a "nullity from the beginning," because Mrs. Brock, as co-trustee of the Brock Family Trusts was required to participate, but did not, in the creation of the Giftrusts. As to Count II, the probate court awarded the respondents, as co-trustees of the Brock Family Trusts, $19,956.99, which they had alleged should have been paid over to them in addition to the $770,000 paid to them on July 20, 2001, despite the fact that the respondents' motion for summary judgment did not allege any facts concerning the $19,956.99. As to Count III, the

probate court awarded the respondents, as co-trustees of the Brock Family Trusts, $340,053.75 for the loss alleged to have resulted from the appellant's delay in liquidating the Giftrusts.

This appeal followed.

### Appellate Jurisdiction

 As in every case, before we can consider the merits of this appeal, we must first determine, *sua sponte,* our jurisdiction to do so. *Nicholson Constr. Co. v. Mo. Highway & Transp. Comm'n,* 112 S.W.3d 6, 9 (Mo.App.2003) (*citing Comm. for Educ. Equal. v. State,* 878 S.W.2d 446, 450 (Mo. banc 1994)). Without jurisdiction to review on the merits, we must dismiss the appeal. *Id.* (*citing Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997)). Our jurisdiction to review on the merits is predicated on the trial court's having jurisdiction to enter the judgment appealed. *Freeway Media, LLC v. City of Kansas City,* 14 S.W.3d 169, 172 (Mo.App.2000). If the trial court lacked jurisdiction to enter the judgment on which review is sought, then the appellate court lacks jurisdiction to review it on the merits. *Parshall v. Buetzer,* 121 S.W.3d 548, 551–52 (Mo.App.2003).

 In determining our jurisdiction in this case, we first must address the issue of whether the probate court should have dismissed the respondents' action seeking early termination of the eleven Giftrusts, under § 456.590.2, for failing to state a claim upon which relief can be granted, pursuant to Rule 55.27(a)(6).[3] *Parshall,* 121 S.W.3d at 551. The issue of whether a claim has been stated upon which relief can be granted is inherent in every appeal and may be raised, *sua*

---

**3.** All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise

indicated.

*sponte,* by the appellate court. *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group,* 916 S.W.2d 821, 823 (Mo.App.1995). "This is because the failure to state a claim on which relief can be granted essentially deprives the trial court of subject matter jurisdiction and, thus, the authority to rule on the plaintiff's petition; and if the trial court lacked subject matter jurisdiction to rule, we necessarily have no jurisdiction to review the court's ruling on the merits." *Parshall,* 121 S.W.3d at 551–52 (citations omitted). *See Commercial Bank of St. Louis Co. v. James,* 658 S.W.2d 17, 21 (Mo. banc 1983) (stating that the issue of whether a petition fails to state a claim on which relief can be granted, depriving the trial court of subject matter jurisdiction, "is appropriately raised, *sua sponte,* because it is the sound and uniform rule that parties may not create subject matter jurisdiction by agreement"). *Id.*

Pursuant to Rule 55.05, a petition must "contain a short and plain statement of the facts showing that the pleader is entitled to relief." The failure to plead facts showing entitlement to the relief sought deprives the trial court of jurisdiction to grant it. *Commercial Bank of St. Louis Co.,* 658 S.W.2d at 21. Although the petition does not have to plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement and cannot rely on mere conclusions. *Westphal v. Lake Lotawana Ass'n, Inc.,* 95 S.W.3d 144, 152 (Mo.App.2003); *Miller v. Ford Motor Co.,* 732 S.W.2d 564, 565 (Mo. App.1987). Courts disregard conclusions not supported by facts in determining whether a petition states a cause of action. *Lick Creek Sewer Sys. v. Bank of Bourbon,* 747 S.W.2d 317, 322 (Mo.App.1988).

In determining whether a petition states a claim on which relief can be granted, "all facts properly pleaded are assumed true, the averments are given a liberal construction, and the petition is accorded those reasonable inferences fairly deducible from the facts stated." *Commercial Bank of St. Louis Co.,* 658 S.W.2d at 21–22. We "construe the allegations favorably to plaintiff to determine whether they invoke principles of substantive law and inform defendant of what plaintiff will attempt to establish at trial." *Defino v. Civic Center Corp.,* 718 S.W.2d 505, 509 (Mo.App.1986). A plaintiff's petition states a cause of action where "its averments invoke principles of substantive law which may entitle the plaintiff to relief." *Asaro v. Cardinal Glennon Memorial Hosp.,* 799 S.W.2d 595, 597 (Mo. banc 1990). A petition is sufficient if it:

> invokes substantive principles of law entitling plaintiff to relief and alleges ultimate facts informing defendant of that which plaintiff will attempt to establish at trial. It should not be dismissed for mere lack of definiteness or certainty or because of informality in the statement of an essential fact.

*Grewell v. State Farm Mutual Auto. Ins., Co.,* 102 S.W.3d 33, 36 (Mo. banc 2003). In assessing the sufficiency of a petition:

> [n]o attempt is made to weigh the factual allegations contained in the petition to determine whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Anderson v. Village of Jacksonville,* 103 S.W.3d 190, 193 (Mo.App.2003) (citations omitted).

On April 19, 2000, the respondents filed a petition denominated: *"PETITION TO TERMINATE THE GIFTRUSTS* (Sec-

tion 456.590 RSMo)." In their petition, they requested that the probate court: (1) terminate the Giftrusts pursuant to § 456.590; and (2) direct the "remaining assets of each Giftrust, both principal and accrued and undistributed income, be transferred to the Trustees [the respondents] of the corresponding [Brock Family Trusts].[4] Section 456.590.2 provides, in pertinent part:

> 2. When all of the adult beneficiaries who are not disabled consent, the court may, upon finding that such variation will benefit the disabled, minor, unborn and unascertained beneficiaries, vary the terms of a private trust so as to reduce or eliminate the interests of some beneficiaries and increase those of others, to change the times or amounts of payments and distributions to beneficiaries, or to provide for termination of the trust at a time earlier or later than that specified by the terms.

The application for early termination under § 456.590.2 can be filed by a trustee of the trust sought to be terminated "or by any person beneficially interested *under* the trust." § 456.590.4 (emphasis added).

On December 6, 2001, the respondents filed an amended three-count petition, reasserting their claim for early termination of the Giftrusts, pursuant to § 456.590.2, by incorporating the allegations of their initial petition, including the attached exhibits, except for Exhibit W, which was replaced with a "more recent version" of the Giftrust agreement, setting forth the general terms of the Giftrusts. In Counts II and III of their amended petition, the respondents asserted claims against the appellant, as trustee of the Giftrusts, for damages for breach of a fiduciary duty and negligence.

To properly plead a cause of action, the "petition must state allegations of fact in support of each essential element of the cause pleaded." *Duvall v. Lawrence*, 86 S.W.3d 74, 80 (Mo.App.2002). Thus, in order to properly plead a cause of action for the variation or termination of a trust, pursuant to § 456.590.2, the petitioner must plead ultimate facts establishing that: (1) all the adult beneficiaries of the subject trust had consented to the requested variation or termination of the trust; and (2) the requested variation or termination would benefit the disabled, minor, unborn and unascertained beneficiaries of the trusts. *See Hamerstrom v. Commerce Bank*, 808 S.W.2d 434, 438 (Mo.App.1991) (interpreting § 456.590.2). Thus, here, to properly state a cause of action for early termination of the Giftrusts, under § 456.590.2, as pled in Count I of their amended petition, the respondents were required to plead ultimate facts, not conclusions, sufficient to demonstrate both of the foregoing elements.

Given the fact that the respondents conceded that none of their eleven grandchildren, the named primary beneficiaries of the Giftrusts, were adults, to invoke the

---

4. Even assuming that a set of facts could have been pled subjecting the Giftrusts to early termination, under § 456.590.2, the respondents failed to plead any facts demonstrating a right of the Family Trusts to the assets of the Giftrusts after termination. The Giftrusts were *irrevocable* trusts such that the grantors thereof, the Family Trusts in this case, would not have any legal right to the proceeds after termination. And, the respondents are not listed as alternate beneficiaries in any of the Giftrusts' Adoption Agreements. Thus, in addition to failing to state a cause of action for termination under § 456.590.2 due to a failure to plead ultimate facts demonstrating that the respondents were adult beneficiaries of the Giftrusts, the respondents failed to state a cause of action for the transfer of the termination proceeds to the Family Trusts, as they requested, because they pled no facts demonstrating a legal right thereto.

authority of the probate court to terminate under § 456.590.2, the respondents alleged in their petition that they, the "Trustees of the [Brock Family] Trusts, *as beneficiaries of the respective Giftrusts,* [had] consented to the termination of the Giftrusts and the transfer of the proceeds of each Giftrust to the Trustees of the respective [Family] Trusts." (Emphasis added.) Of course, their assertion that they were "beneficiaries of the respective Giftrusts," is nothing more than a legal conclusion, *see Ozark County School Dist. R–V of Ozark County v. Lay,* 358 S.W.2d 77, 81 (Mo.App.1962), that was not sufficient to invoke the probate court's jurisdiction to grant the relief sought, the termination of the Giftrusts, pursuant to § 456.590.2. Hence, unless the respondents' petition otherwise alleged ultimate facts supporting their assertion that they are adult beneficiaries of the Giftrusts, the probate court lacked jurisdiction to terminate the Giftrusts, pursuant to § 456.590.2.

For the respondents, as trustees of the Brock Family Trusts, to be considered "adult beneficiaries" of the Giftrusts for purposes of § 456.590.2, they had to plead in their petition ultimate facts demonstrat-ing that they were individually named or included in a named class, by the grantors of the Giftrusts, as beneficiaries of the trusts. *See Hamerstrom,* 808 S.W.2d at 438 (holding that, for purposes of § 456.590.2, "beneficiaries" are defined as "those persons, including unborn and unascertained issue, individually named or who are included in a named class, identified by the testator in the testamentary trust and for whom the testator expressed intent to make provision"). In that regard, the respondents alleged in their initial petition that they, as the trustees of the Brock Family Trusts, created the Giftrusts pursuant to a "Gift Trust Agreement" executed for each trust, setting forth the general terms of each, and an "Adoption Agreement," setting forth, *inter alia,* the primary beneficiary, alternate beneficiary, and termination date of each Giftrust. In addition, the petition listed the name of each of the eleven individual Giftrusts, primary beneficiary, and alternate beneficiary, and the termination date and exhibit number of the respective attached adoption agreement, which, pursuant to Rule 55.12, became a part of the petition:

| Name | Primary Beneficiary | Alternate Beneficiary | Termination Date | Exhibit Number |
|---|---|---|---|---|
| Grant Stuart Downing Giftrust | Grant S. Downing Trust | None | 3/30/10 | L |
| Coleman David Downing Giftrust | Coleman D. Downing Trust | None | 4/11/07 | M |
| Joshua William Downing Giftrust | Joshua W. Downing Trust | None | 4/25/12 | N |
| Aubrey Elizabeth Downing Giftrust | Aubrey E. Downing Trust | None | 4/19/16 | O |
| Johnson Vaughn Brock Giftrust | Johnson V. Brock | None | 11/12/08 | P |
| Cameron Joseph Brock Giftrust | Cameron J. Brock Trust | None | 5/18/11 | Q |
| J. Marshall D'Artagnan Brock Giftrust | J. Marshall D. Brock Trust | None | 4/22/14 | R |
| Cates Kimberli Harris Giftrust | Cates K. Harris Trust | None | 5/26/07 | S |
| Brock Edward Harris Giftrust | Brock E. Harris Trust | None | 2/01/09 | T |
| Clayton Robert Harris Giftrust | Clayton R. Harris Trust | None | 4/21/12 | U |
| Hamilton John Harris Giftrust | Hamilton John Harris | Hamilton John Harris Trust | 8/10/15 | V |

As the respondents' petition clearly sets out, the named primary beneficiary for each Giftrust was the grandchild for whom the trust was named, with no alternate beneficiary being named, except in the case of the "Hamilton John Harris Giftrust," which the respective Adoption Agreement indicated that the alternate beneficiary was the "Hamilton John Harris Trust." However, as to that Giftrust, the respondents point out in a footnote in their brief that this designation in their petition was a mistake—that no alternate beneficiary was intended. Hence, these allegations of the respondents' petition, along with the incorporated attachments, even when given their most liberal intendment, clearly reflect the fact that the respondents, as the trustees of the Brock Family Trusts, were not named as beneficiaries of the Giftrusts or included in a named class of beneficiaries.

In contrast to the avalanche of allegations in the respondents' petition reflecting the fact that they, as the trustees of the Brock Family Trusts, were never named as and were not adult beneficiaries of the Giftrusts, for purposes of § 456.590.2, there is not one allegation supporting the fact that they were. The only allegation bearing on the issue of whether the respondents were adult beneficiaries of the Giftrusts is found in Paragraph 8, in which they allege that they *"intended* that the beneficiary of each Giftrust be the [Brock Family] Trust named for such grandchild from which the Giftrust was funded." (Emphasis added.) For the reasons stated, *infra,* even when this allegation is taken as true and given a liberal construction, the respondents' unilateral intent to be named beneficiaries of the Giftrusts would not be sufficient to demonstrate that they were, in fact, adult beneficiaries of the trust sufficient to invoke the powers of the probate court, under § 456.590.2.

■■■■ Pursuant to the respondents' petition, we know that the naming of the beneficiaries of the Giftrusts was done pursuant to an adoption agreement executed for each trust, all eleven of which were made a part of the respondents' petition. In determining the intent of the parties to the agreements, the respondents and American Century, we are to look only at the terms of those agreements, unless it can be shown that their language is ambiguous, which would allow the introduction of extrinsic evidence to determine the intent of the parties. *Langdon v. United Restaurants, Inc.,* 105 S.W.3d 882, 887 (Mo. App.2003). An agreement is ambiguous:

> only if the terms are reasonably open to more than one meaning, or the meaning of the language is uncertain. Mere disagreement between the parties does not render contractual terms ambiguous. Rather, the test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction when the words are given their plain and ordinary meaning.

*Id.* (citations omitted). In determining whether there is a "meeting of the minds" sufficient to create a contract, we look to the parties' "objective manifestations of intent." *Don King Equipment Co. v. Double D Tractor Parts, Inc.,* 115 S.W.3d 363, 369 (Mo.App.2003). A party's subjective intent is irrelevant. *Id.*

> It is the actions, and not the intentions or suppositions, of the parties that determine whether or not there is a contract and the terms of the contract. Under the objective theory of contracts applied in Missouri since 1892, the stress is on the outward manifestation of assent made to the other party, in contrast to the older idea that a contract

was a true 'meeting of the minds.' It is presumed the parties' intent is expressed by the natural and ordinary meaning of the language in the contract. Disregarding either party's secret surmise or undisclosed assumption, the court must ascertain the parties' meaning and intent as expressed in the language used and give effect to that intent.

*Id.* (citations omitted).

■ As noted, *supra*, the trust documents creating the Giftrusts clearly indicate that the primary beneficiary of each trust was the named grandchild, with no alternate beneficiary being named. The respondents do not allege any ultimate facts in their petition that would demonstrate an ambiguity in the trust documents, with respect to the naming of beneficiaries, that would allow them to introduce extrinsic evidence to prove an intent to name them as beneficiaries. Moreover, even if ultimate facts indicating an ambiguity in the trust instruments, concerning the parties' intent with respect to the naming of the beneficiaries of the Giftrusts, had been pled, the respondents failed to plead any ultimate facts demonstrating that they had expressed such an intent to American Century to name themselves, as trustees of the Brock Family Trusts, as beneficiaries of the Giftrusts, despite the fact they were not named as such in the trust documents. Hence, there is no doubt that the respondents, as co-trustees of the Brock Family Trusts, failed to plead ultimate facts demonstrating that they, as co-trustees of the Brock Family Trusts, were or were intended by the parties to the agreement to be "adult beneficiaries" of the Giftrusts such that they failed to state a cause of action, pursuant to § 456.590.2, for early termination of the Giftrusts.

Inasmuch as the respondents' amended petition failed to allege any ultimate facts establishing that they were "adult beneficiaries" of the Giftrusts, the probate court lacked jurisdiction to enter any judgment, summary or otherwise, for the respondents on a claim for early termination of the Giftrusts, under § 456.590.2. However, based on the probate court's judgment entry of April 11, 2003, granting summary judgment to the respondents on all three counts of their amended petition, it is obvious that, in spite of the allegations in the respondents' petition, the court did not treat respondents' Count I as a claim seeking early termination of the Giftrusts, under § 456.590.2, and enter its order accordingly. Rather, the probate court ordered that: "Judgment is entered in favor of [the respondents] and against [the appellant] on Count I of [the respondents'] amended petition. The purported establishment of the eleven giftrusts by John A. Brock were a nullity from the beginning." There are no facts, ultimate or otherwise, alleged in Count I of the respondents' amended petition that would support the voiding of the Giftrusts, *ab initio*, on the basis that they were not properly created, as found by the probate court in its judgment, or any other basis for that matter. The only allegations in the respondents' amended petition, concerning the voiding of the Giftrusts, is found in Counts II and III, which we discuss, *infra*.

■ It is axiomatic that a trial court cannot enter a judgment on a cause of action not pleaded. *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 875 (Mo.App. 2000). Inasmuch as a summary judgment is, in all respects, a judgment, it cannot be entered on a cause of action not pled. This is made clear in Rule 74.04(a), providing that summary judgment can only be sought "upon all or any part of the *pending* issues." (Emphasis added.) Hence, a

motion for summary judgment can only be sought by a claimant on a theory of recovery that falls within the scope of the pleadings. *See Siemens Bldg. Technologies, Inc. v. St. John's Regional Med. Ctr.*, 124 S.W.3d 3, 9 (Mo.App.2004). In Count I of their amended petition, the respondents did not seek, nor allege any facts in support of voiding the Giftrusts, *ab initio*. Hence, there was no cause of action pled by the respondents in Count I of their amended petition on which the trial court could have entered summary judgment declaring the Giftrusts a "nullity from the beginning."

For the foregoing reasons, the trial court should have dismissed Count I of the respondents' amended petition for failure to state a cause of action on which relief could be granted. Hence, it had no jurisdiction to enter summary judgment thereon, either terminating the Giftrusts, pursuant to § 456.590.2, or voiding them, *ab initio*, as being improperly established, depriving us of jurisdiction to review the same.

Having determined that we lack jurisdiction to review the probate court's summary judgment for the respondents on Count I of their amended petition, we now turn to the court's summary judgment on Counts II and III of the amended petition, over which we do have jurisdiction to review on the merits.

## Standard of Review

In reviewing the grant of summary judgment:

> [o]ur review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380. Furthermore, when considering appeals from summary judgments, we will:

> review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376.

### I.

In Point II, the appellant claims that the probate court erred in entering summary judgment, on April 11, 2003, for the respondents, as the trustees of the Brock Family Trusts, on Counts II and III of their amended petition, awarding them damages for breach of a fiduciary duty and negligence by the appellant, based upon the court's purported "judgment" of January 3, 2001, finding that the Giftrusts were a "nullity from the beginning," because it was not a judgment finally determining the issue. The respondents' claim for damages in Counts II and III of their amended petition was predicated on the notion that the appellant was placed on notice by the purported judgment of January 3, 2001, that the Giftrusts were a nullity such that he should have liquidated the Giftrusts at

the respondents' request on February 7, 2001, and transferred the proceeds to them as co-trustees of the Brock Family Trusts, but failed to do so, resulting in damage to those trusts when the investments during that time frame substantially declined in value.

To be entitled to summary judgment under Rule 74.04, the movant must show that: (1) there is no genuine dispute as to the material facts on which he relies for summary judgment; and (2) based on those facts, he is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380. Where the movant is a claimant, as in our case, to make a *prima facie* case for summary judgment, he is required to state with particularity in his motion all the undisputed material facts necessary to establish each and every element of his claim, referencing the pleadings, discovery, or affidavits that demonstrate the lack of a genuine issue as to those facts. Rule 74.04(c)(1); *ITT Commercial Fin.*, 854 S.W.2d at 381.

Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but the response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." *Victory Hills Ltd. Partnership I v. NationsBank, N.A. (Midwest)*, 28 S.W.3d 322, 333 (Mo.App.2000). In his or her response, the non-movant is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is proper for the movant. *Id.* at 381. A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

In Counts II and III of their amended petition, the respondents sought damages against the appellant on the theories of breach of a fiduciary duty and negligence. In each count, the respondents sought total damages of $360,010.74, $340,053.75 "lost as a result of [the appellant's] delay in liquidating the Giftrusts," plus $19,956.99 for funds "still improperly held by [the appellant]. To be entitled to summary judgment, as claimants, the respondents only had to show entitlement as to one of the two theories of recovery pled. However, here, essential to both theories of recovery is the proof element that the probate court entered a "judgment" on January 3, 2001, declaring the Giftrusts to be void, *ab initio*. In that regard, the respondents alleged that this judgment put the appellant on notice that he should immediately liquidate the Giftrusts, as being invalidly created from the beginning, and remit the proceeds to the alleged grantors, the Brock Family Trusts, and that his delay in doing so resulted in damage to the Brock Family Trusts due to a decline in the market during the critical time alleged. Thus, to make a *prima facie* case for summary judgment on either theory pled, the respondents not only had to allege, *inter alia*, undisputed material facts establishing that the probate court had entered a judgment on January 3, 2001, declaring the Giftrusts to be a "nullity from the beginning," but had to demonstrate that this fact, coupled with the other alleged undisputed material facts, entitled them to a judgment for damages, as a matter of law.

In order to resolve the issue presented, it is first necessary to determine how the so-called judgment of January 3, 2001, came to pass. In that regard, the record reflects, in pertinent part, that on August 24, 2000, the appellant filed a "Motion of Defendant Trustee to Add Unborn and Unknown as Parties, to Serve by Publication and to Appoint Independent Guardians Ad Litem." On January 3, 2001, the probate court overruled the motion, entering what it denominated, for some unexplained reason, a "judgment," rather than an order, which it properly should have been denominated.[5] In overruling the motion, the probate court concluded in its order that: "the attempt by John A. Brock, as an individual trustee, to create the eleven giftrusts involved herein is a nullity. *Therefore*, [appellant] Blackwood's motion to add unborn and unknown parties and to appoint independent guardians ad litem is irrelevant because no giftrusts have been created." There can be no mistake from the language of the January 3, 2001, order that the probate court, in denying the appellant's motion, was relying on a determination that the Giftrusts were void, *ab initio*. However, that issue was not alleged as part of the appellant's motion to add parties, which was the subject of the probate court's order of January 3, 2001, and more importantly, it was not pled in the respondents' initial petition. Rather, the probate court raised the issue, *sua sponte*.

In light of the probate court's determination in its order of January 3, 2001, that the Giftrusts were a nullity from the beginning, the appellant filed, on March 30, 2001, a "Motion for Supplemental Judgment." In his motion, the appellant, in recognition of the probate court's determination of January 3, 2001, that the Giftrusts were a nullity from the beginning, sought an "order and judgment" of the court

1. Finding and declaring that [the appellant] was an innocent transferee of funds withdrawn in breach of certain private trusts, and as such, only required to return the presently available proceeds of the reinvestment of the funds so received by him as the innocent transferee of funds transferred in breach of private trusts;

2. Authorizing him to take credit for expenditures previously made out of said funds for administrative and investment expenses and the payment of income taxes;

3. Allowing [the appellant] to deduct from the proceeds of said funds so transferred in breach of trusts his reasonable legal expenses in participating in this action and determining the amount of same in accordance with the separate application this day filed; and

4. Instructing him as to the payee, person or entity to whom he should refund or retransfer the remaining proceeds of the funds so originally transferred in breach of certain private trusts to him as an innocent transferee.

In seeking a "supplemental judgment," the appellant was recognizing, *inter alia*, that, even in light of the revelation by the probate court in its January 3, 2001, order that the Giftrusts were a nullity, he could

---

5. A judgment is the final determination of the rights of the parties in an action. Rule 74.01 and § 511.020. Every direction of the court or a judge, made or entered in writing and not included in a judgment, is denominated an order, and an application for an order is a motion. Rule 74.02 and § 506.050. *Southwest Forest Industries, Inc. v. Loehr Employment Service of Kansas City, Inc.*, 543 S.W.2d 322, 324 (Mo.App.1976).

not act in liquidating the Giftrusts without a court order.

On May 18, 2001, the probate court entered an order, although again incorrectly denominating it a judgment, overruling the appellant's motion for a "supplemental judgment." In doing so, the probate court stated that the respondents, in responding to the appellant's motion:

> assume[d] that the court [had] ruled that no giftrusts were created and that that ruling was a final disposition of the question of the existence of the trusts. [*Respondents*] *are incorrect in that assumption.* The only issue before the court was ruled upon January 3, 2001 was whether or not unborn and unascertained parties should be made parties to the action. The judgment of January 3, 2001 'invited' [respondents] to file a motion for summary judgment to declare that no trusts were established. [Respondents] have not filed such a motion.

(Emphasis added.) Hence, although the probate court made it clear in its order of January 3, 2001, that it was denying the appellant's motion to add parties on the basis that it had determined that the Giftrusts were a nullity from the beginning, it then declared in the May 18, 2001, order that the issue was still an open question and that there had not been a final disposition of that issue. Of course, the fact was that the issue was not even pending before the court, much less there being a final disposition of the same.

Despite the fact that the probate court made it clear in its order of May 18, 2001, that the issue of the validity of the Giftrusts was not before the court and had not been finally determined, the respondents, as a basis for their claim for damages against the appellant, on the alternative theories of breach of a fiduciary duty (Count II) and negligence (Count III), alleged in Paragraph 20 of their amended petition, that the probate court had declared in its "judgment" that the Giftrusts were a nullity on January 3, 2001, which was approximately eight months *after* the filing of the respondents' initial petition and approximately eleven months *prior* to the filing of their amended petition. In that regard, the respondents alleged that: "On January 3, 2001, this Court entered its Judgment declaring that 'the attempt by John A. Brock, as an individual trustee, to create the eleven giftrusts involved herein is a nullity.'" Relying on this allegation, the respondents further alleged that the appellant was put on notice that he should "immediately liquidate and divest the eleven Giftrusts and wire the proceeds thereof to [respondents]" and that his two-month delay in doing so resulted in the Brock Family Trusts being damaged in that during the delay the Giftrusts substantially declined in value. Hence, in alleging their claim for damages in Counts II and III of their amended petition, the respondents did not plead any ultimate facts supporting a finding by the probate court that the Giftrusts were void, *ab initio*, rather they relied solely on their allegation that the court had already declared in its "judgment" of January 3, 2001, that the Giftrusts were a "nullity" from the beginning. The question then is whether summary judgment would lie for the respondents on either Count II or III of their amended petition based on the probate court's purported "judgment" of January 3, 2001, overruling the appellant's motion to add parties, predicated on its finding therein that the Giftrusts were a "nullity."

■ As discussed, *supra*, the respondents' claim for damages was predicated solely on the probate court's purported judgment of January 3, 2001, declaring that the Giftrusts were a "nullity" such that at least by that date, the appellant was put on notice that he should immedi-

ately liquidate the Giftrusts. Hence, to make a *prima facie* case for summary judgment on either Count II or III, as pled in their amended petition, the respondents, as claimants, were required to allege, *inter alia*, in their motion undisputed material facts establishing that the appellant had been put on notice as of January 3, 2001, of the nullity of the Giftrusts, pursuant to the probate court's order of that date, declaring them to be a nullity. In his response to the respondents' motion for summary judgment, the appellant denied that the probate court had by its purported judgment of January 3, 2001, entered a final judgment declaring the Giftrusts to be a nullity, citing the subsequent ruling of the court on May 18, 2001, declaring otherwise. Thus, whether the appellant had been put on notice of the "nullity" of the Giftrusts, at the critical time alleged, by the probate court's order of January 3, 2001, was put in dispute, such that a *prima facie* case for summary judgment was not made on the basis alleged in the respondents' motion, requiring us to reverse.

Although the respondents clearly predicated their motion for summary judgment on Counts II and III of their amended petition on the probate court's purported judgment of January 3, 2001, declaring the Giftrusts to be a "nullity from the beginning," the court granted summary judgment based on the appellant's "failure to discover that the giftrusts were not properly created and for his subsequent failure to promptly liquidate the investments." In its April 11, 2003, summary judgment, the probate court found that the appellant "was on notice as of May 2, 2000 that he was not, in fact, the trustee of the giftrusts." The court arrived at this finding based on the fact that the record indicated that "shortly before" that date, the appellant's then attorney had "forwarded his entry of appearance on behalf of [the appellant] to the court implying that he had received a copy of the petition to which were attached the eleven declarations of trust for the grandchildren," which should have "raised the question [with the appellant] of whether or not John A. Brock as one trustee had authority to establish the giftrusts without the joinder of Donnie V. Brock, co-trustee." From this and the "hint" that the probate court had given, in its purported judgment of January 3, 2001, as to its belief that the Giftrusts were a nullity from the beginning due to Mrs. Brock's failure to expressly act in the creation of the Giftrusts, the court reasoned that the appellant should have acted on his own, without court order, and liquidated the Giftrusts immediately after the respondents so requested on February 7, 2001, which is the starting date from which they calculated their damages. As we discuss, *infra*, the probate court's summary judgment for the respondents on Counts II and III of their amended petition is infirm on several grounds. In addition, we would also note that in reading the probate court's judgment it is clear that in entering summary judgment for the respondents, it was choosing between competing assertions of facts by the parties and competing inferences, which is not proper in entering summary judgment. *Robinson v. State Highway & Transp. Comm'n,* 24 S.W.3d 67, 76 (Mo.App.2000) (a genuine issue of material fact exists, such that summary judgment is not proper, where the record contains competent evidence of two plausible, but contradictory accounts of the essential facts). However, we need not discuss those additional infirmities in deciding this appeal.

■ Even if we were somehow able to stretch the respondents' petition as including allegations of ultimate facts from which it could be inferred that the Giftrusts were void, *ab initio*, in contrast to the respondents' reliance on there being a final deter-

mination of that issue by the probate court, pursuant to the court's order of January 3, 2001, the allegations of material facts of the respondents' motion for summary judgment, even if deemed true, would still not entitle them to judgment as a matter of law. This is so in that as we discuss *supra*, the respondents' alternate theories for recovering damages against the appellant are both predicated on his failing to act, without a court order, in liquidating the Giftrust assets as of February 7, 2001, after being put on notice that the Giftrusts had not been legally created and after he had been requested by the respondents to act. The appellant asserts that the respondents' claim for damages ignores the fact that he had no authority to liquidate, on his own, the Giftrusts at the time requested by the respondents, even if he were deemed to have been put on notice that Mrs. Brock was a co-trustee of the Brock Family Trusts and did not expressly act in the creation of the Giftrusts.

■■■ The respondents' theories of recovery in Counts II and III, with or without the January 3, 2001, "judgment" of the probate court declaring that the Giftrusts were a "nullity," could not succeed unless the appellant could have acted unilaterally in liquidating the Giftrusts, upon discovering that Mrs. Brock had not signed the trust instruments creating the Giftrusts such that they were void, *ab initio*. And, of course, this would be true only if we assume in the first instance that under the applicable law, the Giftrusts would be void, *ab initio*, for Mrs. Brock's not being actively involved in the creation of the Giftrusts, which we discuss, *infra*. In any event, the respondents cite to nothing in the law or the trust instruments that would have allowed the appellant to act without court order in liquidating the Giftrusts' assets and remitting the proceeds to the respondents, as co-trustees of the alleged grantors of the Giftrusts, even after being put on notice that Mrs. Brock had failed to act in conjunction with Mr. Brock in establishing the Giftrusts. As a general proposition, a trustee only has those powers granted to him by the terms of the trust, *Columbia Union Nat. Bank and Trust Co. v. Bundschu*, 641 S.W.2d 864, 877 (Mo.App.1982), or by statute, unless otherwise limited by the trust, § 456.510.1. In that regard, § 456.570.1 provides that:

> A court of competent jurisdiction for cause shown and upon petition of the trustee or affected beneficiary and upon appropriate notice to the affected parties may relieve a trustee from any restrictions on his power that would otherwise be placed upon him by the trust or by this chapter.

This provision in the law would appear to be in keeping with case law that a "court of equity as a part of its general supervisory power over trusts has the authority to instruct and advise trustees as to their powers and duties." *McEntee v. Halloran*, 391 S.W.2d 266, 268 (Mo. *banc* 1965).

Absent a court order ordering the appellant to liquidate the Giftrusts as of February 7, 2001, as being void, *ab initio*, the fact that the appellant may have been put on notice of the potential problems concerning the creation of the Giftrusts, as of February 7, 2001, would not support the respondents' theory of damages. Thus, even assuming that, legally, Mrs. Brock's failure to expressly act in conjunction with Mr. Brock in establishing the Giftrusts was fatal to their creation, and that the respondents pled undisputed material facts establishing that the appellant was placed on notice of such, during the critical juncture alleged, they did not make a case for damages, as a matter of law, as to either Count II or III.

Even assuming, further, that the respondents could, without a court order to liquidate or terminate, assert a claim for damages based on notice to the appellant of Mrs. Brock's failure to expressly act, along with Mr. Brock, in creating the Giftrusts, in order for the respondents to succeed on their motion for summary judgment on either theory pled, they still had to show that her so acting was legally necessary in creating the Giftrusts. If it was not, then obviously their claim for damages must fail in that no basis would exist for voiding, *ab initio*, the Giftrusts such that no basis would exist for the appellant to liquidate or terminate the trust at the critical time alleged, on which the respondents' claim for damages is built. With respect to that issue, the respondents argued in their motion that the Giftrusts were created from funds of the Brock Family Trusts such that, as a co-trustee, Mrs. Brock was required to expressly act in creating the Giftrusts. Thus, to be entitled to summary judgment on their claim for damages, the respondents had to establish that the Giftrusts were created from funds of the Brock Family Trusts, and, therefore under the controlling law, Mrs. Brock, as a co-trustee of the Brock Family Trusts, was required to expressly act in creating the Giftrusts.

 As to the respondents' allegation in their motion that the Giftrusts were created from funds of the Brock Family Trusts, the appellant, in his response thereto, disputed that fact. Specifically, he alleged in his response that the funds used to establish the Giftrust accounts came from Mr. Brock's personal bank account, arguing that:

> The documentary evidence and deposition testimony establish that the funds used to create the Giftrust accounts came from John Brock's personal account at the Bank of Oklahoma, not

from any accounts held by or for the benefit of the Brock Family Trusts. That account was owned by John Brock in his individual capacity. The Tax Identification Number on that account was John Brock's Social Security Number. Donnie Brock was a co-holder of that account. The bank's records show that the account was not held by the Brocks in any representative or fiduciary capacity.

Thus, a genuine dispute was created as to a material fact, on which the respondents were relying for summary judgment, as to Counts II and III, such that summary judgment was not proper thereon. And, even assuming, *arguendo*, that there was no factual dispute as to the source of the funds for establishing the Giftrusts, the appellant contends that the respondents' motion, based on Mrs. Brock's not expressly acting in the creation of the Giftrusts, still must fail in that the applicable law was contrary to the respondents' contention that it was necessary that Mrs. Brock act with Mr. Brock in order to validly create the Giftrusts.

In his response to the respondents' motion, the appellant did not dispute the respondents' allegation that "[d]uring his September 11, 2002 deposition, petitioner John A. Brock testified that his wife, Donnie V. Brock, although co-trustee of the Oklahoma grandchildren's trusts, was not actively involved in the establishing of the Giftrusts with American Century and did not sign the various Giftrust adoption agreement forms or checks in paying for the Giftrusts." However, he contends that under the controlling law of Oklahoma, Mrs. Brock's active involvement in creating the Giftrusts from the Brock Family Trusts was not required, but only her "authorization" for Mr. Brock to act as he did in creating the Giftrusts. From this, he further contends that the respondents did

not allege any material facts establishing that Mr. Brock was not authorized to invest the Brock Family Trust funds to create the Giftrusts, such that a *prima facie* case for summary judgment for the respondents on Counts II and III of their amended petition was not made.

As the probate court stated in its judgment, Oklahoma law is controlling in interpreting Mr. Brock's power to act on behalf of the Brock Family Trusts in creating the Giftrusts due to a choice of laws provision in the trust documents, providing that: "This Declaration administered in accordance with the laws of the State of Oklahoma." In that regard, 60 O.S. § 175.17.C (1941, 2001) provides, in pertinent part: "Any co-trustee may give a power of attorney to another trustee or *authorize* a co-trustee to perform any act in the administration of the trust." (Emphasis added.) The probate court, specifically recognizing this provision of Oklahoma law, concluded in its judgment that:

> It is irrelevant that Donnie V. Brock let her husband make virtually all decisions and take all actions in connection with the grandchildren's trusts. The trust instruments required their joint action. She had a duty to be informed and to act in the best interests of the trust beneficiaries independently of her husband.

In so finding, the probate court relied on *Ramsey v. Boatmen's First Nat. Bank of Kansas City, N.A.*, 914 S.W.2d 384 (Mo. App.1996), interpreting Missouri law. The court in relying on *Ramsey*, piggybacked on *Cooper v. Federal Nat. Bank of Shawnee*, 175 Okla. 610, 53 P.2d 678, 682 (1936), for the proposition that, under Oklahoma law: "[c]o-trustees cannot act independently of one another...." *Cooper*, however, was decided long before § 175.17.C was amended to allow a trustee to "authorize a co-trustee to perform any act in the administration of the trust." Hence, the question becomes whether, pursuant to this provision of the Oklahoma statute, Mr. Brock could have validly created the Giftrusts from Brock Family Trust funds without the express approval of Mrs. Brock and her signature on the trust documents creating them.

■ The interpretation to be given to a statute is a question of law, which we decide, *de novo*. *Pavlica v. Director of Revenue*, 71 S.W.3d 186, 189 (Mo.App. 2002). In interpreting § 175.17.C, we are bound to give it the interpretation that the Oklahoma courts have given it. *Hensley v. Missouri Div. of Child Support Enforcement*, 905 S.W.2d 889, 891 (Mo.App.1995). In that regard, our research discloses that the statutory language providing that a trustee may "authorize a co-trustee to perform any act in the administration of the trust," has not been interpreted by the Oklahoma courts. Thus, we are left to interpret § 175.17.C using those principles of statutory interpretation approved by Oklahoma law. In that regard:

> The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. Courts will give the words of a statute a plain and ordinary meaning, unless a contrary intention plainly appears. When the language of a statute is plain and unambiguous, no occasion exists for further judicial inquiry or for the application of rules of construction, and the statute will be accorded meaning as expressed by the language employed.

*Pentagon Academy, Inc. v. Independent School Dist. No. 1 of Tulsa County*, 82 P.3d 587, 591 (Okla.2003).

In interpreting the subject provision of the Oklahoma statute, the interpretation to be given the term "authorize" is obviously the critical determination. That term is

not defined by Oklahoma law for purposes of § 175.17.C. As such, giving it its plain and ordinary meaning, as found in the dictionary, we define it as meaning "to endorse, empower, justify, or permit by or as if by some recognized or proper authority (as custom, evidence, personal right, or regulating power)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 146 (1986); *see Curry v. Ozarks Elec. Corp.*, 39 S.W.3d 494, 496–97 (Mo. *banc* 2001). Giving "authorize" this interpretation, we conclude that the probate court erred in determining that under the controlling law, the Giftrusts were void, *ab initio,* for Mrs. Brock's failure to be actively involved in the creation of the Giftrusts and her failure to sign the trust instruments creating them.

Under the correct interpretation of the controlling Oklahoma law, for the Giftrusts to be validly created, it would have been sufficient for Mrs. Brock to have previously empowered Mr. Brock to make the type of investment he made in creating the Giftrusts with American Century. Thus, to make a *prima facie* case for summary judgment on Counts II and III, the respondents were obligated to plead, *inter alia,* undisputed material facts demonstrating that Mr. Brock was not "authorized," as it is defined, *supra,* to invest the Brock Family Trusts to create the Giftrusts. The respondents' motion makes no such allegation. It relies exclusively on an interpretation of the law that Mrs. Brock was required to actively participate in the creation of the Giftrusts, including signing the trust documents creating the Giftrusts, the same interpretation relied upon by the probate court in granting summary judgment to the respondents.

Even if the respondents had alleged facts consistent with the correct interpretation of the Oklahoma law, the appellant's response includes numerous allegations disputing the fact that Mr. Brock was not "authorized" by Mrs. Brock, in accordance with § 175.17.C, to invest in the Giftrusts. In that regard, in his response, the appellant cited to Mrs. Brock's deposition testimony, in which she testified that her husband had her authority to invest the funds of the Brock Family Trusts, that she trusted him to make investments that he thought were proper, and she did not require him to get her approval for every investment he made. The appellant cited to many more instances in Mrs. Brock's deposition indicating that Mr. Brock was authorized to make investments such as those made in creating the Giftrusts, including testifying that she envisioned her role as co-trustee of the Brock Family Trusts as simply being available to take over if something should happen to Mr. Brock. Thus, even if the respondents had pled undisputed material facts to establish that Mr. Brock had no specific authority to unilaterally create the Giftrusts from Brock Family Trust funds and did not sign the trust documents creating the trusts, under the correct interpretation of Oklahoma law, a genuine dispute would have existed, in accordance with the appellant's response, sufficient to defeat the respondents' motion for summary judgment on that basis.

For all the foregoing reasons, the probate court clearly erred in granting summary judgment to the respondents on Counts II and III of their amended petition for damages, declaring the Giftrusts to be a "nullity from the beginning" and awarding the respondents damages. Normally, in reversing the grant of summary judgment, we would simply remand the case to the trial court for further proceedings on the pending issues in the case. And, that would be the case even where, as here, the appellant attacks not only the granting of the other party's summary judgment motion, but the denial of his

motion as to the same claim or claims, in that the denial of a motion for summary judgment is not a final and appealable judgment subject to our review. *Stotts v. Progressive Classic Ins. Co.*, 118 S.W.3d 655, 668 (Mo.App.2003). Despite there being a lack of a final judgment, with respect to a denial of a motion for summary judgment, however, there have been instances where our appellate courts have ostensibly reviewed the denial of a motion for summary judgment due to the existence of extraordinary circumstances. *Id.*

Such circumstances have been found where in reviewing and reversing the grant of one party's motion on the merits, the appellate court necessarily concludes that on the summary judgment record made, the adverse party's motion should have been sustained. In such cases, to reverse and remand without ordering the trial court to enter summary judgment for the adverse party would seem illogical. Despite the logic of the situation, such a course of action still begs the question as to what authority the appellate court has for reviewing and ruling on the denial of the summary judgment motion in that it is not a final judgment subject to appellate review.

The answer to the question posed would appear to lie in the fact that in the 'extraordinary circumstances' cases, it could be argued that the appellate court is not actually reviewing the denial of the motion for summary judgment when it declares that summary judgment should have been entered for a party in reversing the trial court's grant of summary judgment for the other party. The argument would be that, in declaring that summary judgment should have been granted to the party whose motion was denied by the trial court, the appellate court is doing so as part and parcel

of its authorized review and ruling on the trial court's grant of summary judgment to the adverse party and in accordance with Rule 84.14, which authorizes the appellate court to declare the judgment that the trial court ought to have given.

*Id.* at 668–69 (citations omitted).

■ Here, one of the bases for determining that the probate court erred in granting the respondents' motion for summary judgment on Counts II and III of their amended petition is that, without an order of the court to liquidate or terminate the Giftrusts at the time the respondents alleged that their damages began to accrue, February 7, 2001, the appellant, as a matter of law, had no authority to so act, such that any delay on his part in acting to liquidate or terminate the Giftrusts, as pled by the respondents, would not, as a matter of law, support an award of damages on the theories pled, regardless of the facts. Hence, as a matter of law, the appellant's motion for summary judgment on Counts II and III of the respondents' amended petition should have been sustained. Thus, pursuant to Rule 84.14, the probate court, on remand, will be directed to enter summary judgment for the appellant on his motion for summary judgment as to Counts II and III of the respondents' petition.

**II.**

In Point III, the appellant claims that the probate court erred in denying his motion for summary judgment as to his seven counterclaims, one of which was denominated a declaratory judgment action, seeking a declaration of the court that the Giftrusts were validly created, contrary to the respondents' contention that they were not.[6] Technically, the appellant's Point III

---

6. Clearly, in seeking declaratory judgment, the appellant was simply trying to defend

is not subject to appellate review in that, as we discuss, *supra*, we do not review denials of motions for summary judgment. *Stotts*, 118 S.W.3d at 668. However, in ruling as we do, *supra*, with respect to the probate court's grant of summary judgment to the respondents on their amended petition, we necessarily have mooted six of the appellant's counterclaims such that pursuant to Rule 84.14, the probate court, on remand, will be directed to overrule the appellant's motion for summary judgment as to six of the appellant's seven counterclaims as being moot.

As to the appellant's seventh and remaining counterclaim, denominated as Count VI, the appellant sought payment from the Giftrusts for "his reasonable expenses for responding to this litigation, including reasonable attorneys' fees and out of pocket expenses, together with the costs of this action." In overruling the appellant's motion for summary judgment on this counterclaim, the probate court found that the appellant was at "fault" for the litigation, because he failed to liquidate in a timely fashion, after being put on notice concerning the failure of Mrs. Brock to expressly act in the creation of the Giftrusts, such that he was not entitled to recover his reasonable expenses from the Giftrusts. Inasmuch as we have effectively determined that he was not at "fault" for the litigation, as pled by the respondents, the probate court's denial of the appellant's motion for summary judgment

as to Count VI of his counterclaims on that basis must be reversed and re-considered as the sole remaining issue in this case.

## Conclusion

The probate court's summary judgment for the respondents on Count I of their amended petition, seeking to terminate the Giftrusts, pursuant to § 456.590.2, is dismissed for a lack of jurisdiction for failure to state a cause of action on which relief could be granted. The probate court's summary judgment for the respondents on Counts II and III of their amended petition, declaring the Giftrusts a "nullity from the beginning" and awarding the respondents damages, is reversed. The case is remanded to the probate court with directions to dismiss Count I of respondents' amended petition, to enter summary judgment for the appellant on Counts II and III of the amended petition, and to consider and determine the appellant's attorney's request for fees and expenses in defending the respondents' cause of action.

HOLLIGER and NEWTON, JJ., concur.

against the respondents' action for damages, which was predicated on the proposition that the Giftrusts were not validly created. Of course, it is well settled that a declaratory judgment action will not lie where the declaration is being sought to defend against an action brought against the party seeking declaratory relief. *Parshall v. Buetzer*, 121 S.W.3d 548, 552 (Mo.App.2003). Hence, as to the appellant's purported counterclaim for declaratory relief, it is a nullity and not subject to being ruled on by the probate court. *Id.* at 552–53.